**SO ORDERED.**

**SIGNED this 26 day of April, 2013.**



_____

**James D. Walker, Jr.**
**United States Bankruptcy Judge**


UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 12-51855-JDW |
| LUCIUS RODNEY CRUTCHFIELD, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE


COUNSEL
For Debtor:   G. McGregor Jordan, Jr.
              115 Vista Circle
              Macon, Georgia 31204

## MEMORANDUM OPINION

This matter comes before the Court on Debtor's objections to claims.  This is a core

matter within the meaning of 28 U.S.C. § 157(b)(2)(B).  After considering the pleadings, the

evidence, and the applicable authorities, the Court enters the following findings of fact and

conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor filed a Chapter 13 case on July 11, 2012. On Schedule F, Debtor listed unsecured

debts in the total amount of $100,448. Proofs of claim for unsecured debts have been filed in the

total amount of $100,974.96. Debtor's Chapter 13 plan proposed a 100 percent distribution to

unsecured creditors and was confirmed on December 3, 2012.

Just prior to confirmation, on November 28, 2012, Debtor filed objections to seven proofs

of claim–claims 8, 9, 10, 11, 12, 13, and 15–requesting that they be disallowed in full. In each

case, the claimant purports to be an assignee of the original creditor. The proofs of claim at issue

were filed between September 6, 2012, and November 12, 2012, and they represent claims in the

amount of $49,482.77, or 49 percent of unsecured claims.

In each claim objection, Debtor made the following contentions:

1. Creditor's claim is not enforceable against Debtor under Georgia
   Law;
2. Debtor does not owe any money to Creditor;
3. Creditor is not the real party in interest to enforce the claim;
4. The documentation attached to Creditor's Proof of Claim does
   not comply with Rule 3001 and Official Form 10[.]

(Objection to Claim, docket nos. 22-28.) Debtor also filed interrogatories and requests for

production as to each claim, which sought information and documents relating to the chain of

2

assignment for the claims. Debtor received no responses to the discovery requests from any

claimants.

The Court held a hearing on the claim objections on February 11, 2013. Debtor's counsel

appeared at the hearing, but no representatives appeared for any of the claimants. During the

hearing, the Court accepted Debtor's stipulated testimony that he never made any agreement with

any of the entities who filed the proofs of claim; he never received any notice of assignment of

the claims; he never received any correspondence or other communications from the assignees;

he has never heard of the assignees; and he has no knowledge that he owes money to the

assignees. As to each claim, Debtor scheduled a corresponding debt to the original creditor in an

amount approximate to the amount of the claim. At no time have the claimants responded in any

way to Debtor's objections.

The claims at issue in this case are as follows:

**Claim 8**
- Name of creditor: Quantum3 Group LLC as agent for MOMA Funding LLC
- Amount of claim: $814.67
- Last four digits of account number: 7598
- Debtor may have scheduled account as: GE Money Bank
- Attachments: Account Summary with GE Money Bank named as the original creditor and
  assignor; MOMA Funding LLC named as the current creditor; LR Crutchfield named as the
  account holder; partially redacted account number of 7598; partially redacted social security
  number of the account holder; open date of 2/28/2005; last payment date of 5/4/2012; last
  payment amount of $97; and charge-off date of 8/13/2012.
- Corresponding debt on Schedule F: PayPal - GE Capital Retail Bank; no account number
  given; $763.00.

**Claim 9**
- Name of creditor: Back Bowl I LLC, Series C
- Amount of claim: $14,953.13
- Last four digits of account number: 0057
- Debtor may have scheduled account as: no information provided
- Attachments: Account summary with debtor's name, partially redacted social security

3

number, balance of account, open date of January 17, 1996, last payment date of June 1, 2012, last payment amount of $897.21, last purchase date of December 29, 2011, and CitiBank named as the issuer.
- Corresponding debt on Schedule F: Citi Card, account number 0057, $15,712.00

## Claim 10
- Name of creditor: Back Bowl I LLC, Series C
- Amount of claim: $573.54
- Last four digits of account number: 8467
- Debtor may have scheduled account as: no information provided
- Attachments: Account summary with debtor's name, partially redacted social security number, balance of account, open date of June 1, 1994, last payment date of May 7, 2012, last payment amount of $75, last purchase date of May 28, 2012, and CitiBank named as the issuer.
- Corresponding debt on Schedule F: Citi Card, account number 8467, $494.00

## Claim 11
- Name of creditor: Portfolio Recovery Associates, LLC, successor in interest to Capital One, NA by PRA Receivables Management, LLC, agent
- Amount of claim: $18,580.40
- Last four digits of account number: 8224
- Debtor may have scheduled account as: Capital One, NA
- Attachments: (1) Account summary with debtor's name; Portfolio Recovery Associates, LLC listed as account owner; Capital One, NA listed as original creditor; Capital One, NA listed as seller of account; redacted account number of 8224; date of loan as July 11, 2003; last payment date of May 18, 2012; charge off date of August 9, 2012; and account balance; (2) Limited power of attorney designating PRA Receivables as attorney in fact for Portfolio Recovery Associates for purposes of filing proofs of claim in the bankruptcy court; (3) Bill of sale dated September 21, 2012 recognizing the sale of "Accounts identified in the Sale File" from Capital One Bank to Portfolio Recovery Associates; signed by John H. Maurer, vice president of Capital One Bank.
- Corresponding debt on Schedule F: Capital One, account number 8224, $18,246.

## Claim 12
- Name of creditor: Portfolio Recovery Associates, LLC, successor in interest to Citibank, NA (Sears Gold Mastercard) by PRA Receivables Management, LLC, agent
- Amount of claim: $5,871.28
- Last four digits of account number: 7924
- Debtor may have scheduled account as: Sears Gold Mastercard
- Attachments: (1) Account summary with debtor's name; Portfolio Recovery Associates, LLC listed as account owner; Sears Gold Mastercard listed as original creditor; Citibank, NA listed as seller of account; date of loan as June 1, 1993; last payment date as May 11, 2012; charge off date as August 15, 2012; and account balance; (2) Limited power of attorney

designating PRA Receivables as attorney in fact for Portfolio Recovery Associates for purposes of filing proofs of claim in the bankruptcy court; (3) Bill of sale and assignment dated September 27, 2012, recognizing the sale of "the Accounts described in Exhibit 1 and the final electronic file" from Citibank (NA) to Portfolio Recovery Associates, LLC; signed by Patricia Hall, financial account manager for Citibank.
- Corresponding debt on Schedule F: Sears Card, account number 7924, $5,717.

## Claim 13
- Name of creditor: Portfolio Recovery Associates, LLC, successor in interest to Chase Bank USA by PRA Receivables Management, LLC, agent
- Amount of claim: $2,246.67
- Last four digits of account number: 0899
- Debtor may have scheduled account as: Chase Bank USA, NA
- Attachments: (1) Account summary with debtor's name; Portfolio Recovery Associates, LLC listed as account owner; Chase Bank USA, NA listed as original creditor; Chase Bank USA, NA listed as seller of account; date of loan as June 16, 2002; last payment date as May 23, 2012; charge off date as September 11, 2012; and account balance; (2) Limited power of attorney designating PRA Receivables as attorney in fact for Portfolio Recovery Associates for purposes of filing proofs of claim in the bankruptcy court; (3) Bill of sale dated October 25, 2012, recognizing the sale of "those certain receivables, judgments or evidences of debt described in the Final Data File" from Chase Bank USA, NA to Portfolio Recovery Associates, LLC; signed by Ericka Long, team leader for Chase Bank USA and by an authorized officer of Portfolio Recovery Associates, whose name is not given and whose signature is illegible.
- Corresponding debt on Schedule F: Chase, account number 0899, $2,182

## Claim 15
- Name of creditor: Portfolio Recovery Associates, LLC, successor in interest to Chase Bank USA by PRA Receivables Management, LLC, agent
- Amount of claim: $6,443.08
- Last four digits of account number: 8278
- Debtor may have scheduled account as: Chase Bank USA, NA
- Attachments: (1) Account summary with debtor's name; Portfolio Recovery Associates, LLC listed as account owner; Chase Bank USA, NA listed as original creditor; Chase Bank USA, NA listed as seller of account; date of loan as January 13, 1997; last payment date as May 18, 2012; charge off date as September 11, 2012; and account balance; (2) Limited power of attorney designating PRA Receivables as attorney in fact for Portfolio Recovery Associates for purposes of filing proofs of claim in the bankruptcy court; (3) Bill of sale dated October 25, 2012, recognizing the sale of "those certain receivables, judgments or evidences of debt described in the Final Data File" from Chase Bank USA, NA to Portfolio Recovery Associates, LLC; signed by Ericka Long, team leader for Chase Bank USA and by an authorized officer of Portfolio Recovery Associates, whose name is not given and whose signature is illegible; (4) copy of June 2012 account statement.

• Corresponding debt on Schedule F: Chase, account number 8278, $6,257.00

## Conclusions of Law

At issue in this case is whether the claims identified by Debtor should be disallowed under 11 U.S.C. § 502(b)(1) as unenforceable under Georgia law due to failure to produce a document showing assignment of the claim to the claimant. The Court concludes the challenged proofs of claim are sufficient to create prima facie evidence of the validity and amount of the claims and that Debtor has failed to provide any evidence sufficient to refute the prima facie validity. Therefore, the Court will overrule Debtor's objections and allow the claims.

The claims allowance process is governed by 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure 3001. Pursuant to § 502(a) when a creditor files a proof of claim, its claim is "deemed allowed, unless a party in interest ... objects." When a party in interest files an objection, the claim will be allowed unless one of nine exceptions set forth in § 502(b) applies,[1] including that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1).

Under Rule 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(a) provides that a "proof of claim shall conform substantially to the appropriate Official Form." Form 10: Proof of Claim is the appropriate Official Form. Rule 3001(c) sets forth the requirements for a claim based on a writing. Both Rule 3001(c) and Form 10 were amended

---

[1] Courts disagree about whether § 502(b) provides the exclusive grounds for disallowing a claim. See In re Brunson, 86 B.R. 759, 769 (Bankr. N.D. Tex. 2013). In this case, Debtor has requested disallowance under § 502(b)(1). Therefore the Court need not consider whether a claim may be disallowed for any reason other than those listed in § 502(b).

effective December 1, 2012.[2]

The prior version of Rule 3001(c), which was in effect at the time all the proofs of claim

in dispute were filed and at the time the objections to claim were filed, provides as follows:

> When a claim, or an interest in property of the debtor securing the
> claim, is based on a writing, the original or a duplicate <u>shall be</u>
> <u>filed</u> with the proof of claim. If the writing has been lost or
> destroyed, a statement of the circumstances of the loss or
> destruction shall be filed with the claim.

Fed. R. Bankr. P. 3001(c)(1) (Dec. 1, 2011) (emphasis added).

The current version of 3001(c) includes new subsection (c)(3), which is applicable to

claims based on an open-end or revolving consumer credit agreement, such as credit card

claims.[3] The current version of Rule 3001(c) provides as follows:

> (1) <u>Except for a claim governed by paragraph (3) of this</u>
> <u>subdivision</u>, when a claim, or an interest in property of the debtor
> securing the claim, is based on a writing, a copy of the writing shall
> be filed with the proof of claim. ...
> ...
> (3)(A) When a claim is based on an open-end or revolving
> consumer credit agreement–except one for which a security interest
> is claimed in the debtor's real property–a statement shall be filed
> with the proof of claim, including all of the following information
> that applies to the account:
>> (i) the name of the entity from whom the creditor purchased
>> the account;
>> (ii) the name of the entity to whom the debt was owed at
>> the time of an account holder's last transaction on the
>> account;
>> (iii) the date of an account holder's last transaction;
>> (iv) the date of the last payment on the account; and
>> (v) the date on which the account was charged to profit and

---

[2] See Appendix A for the full text of the 2011 and 2012 versions of Rule 3001(c) and the
related sections of Official Form 10.

[3] All the claims at issue in this case arise from credit card debt.

7

loss.
(B) On written request of a party in interest, the holder of a claim
based on an open-end or revolving consumer credit agreement
shall, within 30 days after the request is sent, provide the
requesting party a copy of the writing specified in paragraph (1) of
this subdivision.

Fed. R. Bankr. P. 3001(c) (Dec. 1, 2012) (emphasis added). The comments to the Rule explain

the reason for the amendment as follows:

> [P]aragraph (3) specifies information that must be provided in
> support of a claim based on an open-end or revolving consumer
> credit agreement (such as an agreement underlying the issuance of
> a credit card). Because a claim of this type may have been sold one
> or more times prior to the debtor's bankruptcy, the debtor may not
> recognize the name of the person filing the proof of claim.
> Disclosure of the information required by paragraph (3) will assist
> the debtor in associating the claim with a known account. ... A
> proof of claim executed and filed in accordance with subparagraph
> (A), as well as the applicable provisions of subdivisions (a), (b),
> (c)(2), and (e), constitutes prima facie evidence of the validity and
> amount of the claim under subdivision (f).
> To the extent that paragraph (3) applies to a claim,
> paragraph (1) of subdivision (c) is not applicable.

Fed. R. Bankr. P. 3001, Comment to 2012 Amendments.

The Supreme Court transmitted the amendment to Congress by order of April 23, 2012.

The order provided in part as follows:

> Ordered:
> 1. That the Federal Rules of Bankruptcy Procedure be, and they
> hereby are, amended by including therein amendments to
> Bankruptcy Rules 1007, 2015, 3001, 7054, and 7056.
> 2. That the foregoing amendments to the Federal Rules of
> Bankruptcy Procedure shall take effect on December 1, 2012, and
> shall govern in all proceedings in bankruptcy cases thereafter
> commenced and, insofar as just and practicable, all proceedings
> then pending.

Order of the United States Supreme Court (April 23, 2012) (emphasis added), *available online at*

8

www.supremecourt.gov/orders/journal/jnl11.pdf at p.795.

Official Form 10 provides additional guidance for claims based on a writing in box 7 and at instruction 7. In the December 2011 version of Form 10, box 7 provided: "Attached are redacted copies of any documents that support the claim[.]" Instruction 7 provided: "Attach redacted copies of any documents that show the debt exists .... You may also attach a summary in addition to the documents themselves."

In the December 2012 version of Form 10, box 7 provides: "Attached are redacted copies of any documents that support the claim, ... or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A)." Instruction 7 provides: "Attach redacted copies of any documents that show the debt exists .... You must also attach copies of ... documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement .... You may also attach a summary in addition to the documents themselves."

Thus, under the prior version of the Rule, assignees of credit card claims were required to include with their proof of claim a copy of the writing on which their claim was based in order to establish prima facie validity of the claim. Under the current version of the Rule, the same assignees merely need to provide a summary of specific data that is calculated to provide the debtor with enough information to match the claim with a debt.[4] As a threshold matter, the Court

---

[4] Instruction 7 of the 2012 version of Form 10 requires claimants to "[a]ttach copies of any documents that show the debt exists" and "also attach copies of ... documents required by FRBP 3001(c)." Official Form 10, instruction 7 (emphasis added). This language could be interpreted to require the claimant to provide the writing on which the claim is based in addition to the information required by Rule 3001(c)(3)(A). The Court rejects such a reading because it directly conflicts with Rule 3001(c)(1)'s express exclusion of credit card type debts from the requirement to file a copy of the writing. See Fed. R. Bankr. P. 9006 ("The forms shall be

9

must decide which version of Rule 3001 applies to Debtor's objections.

**Applicable Version of Rule 3001(c)**. Rule 3001 governs claims procedures and does not create substantive law. "Courts generally apply amendments to procedural rules retroactively to the maximum extent possible" if the proceeding at issue was "then pending" when the amendments took effect and if applying the amendment would be "just and practicable." Michel v. U.S., 519 F.3d 1267, 1271 (11th Cir. 2008) (evaluating amendments to the Rules Governing Section 2255 Proceedings). In this case, the Rule 3001 governs the claims allowance process. "The fundamental purpose of the claims allowance process and the various rules for filing proofs of claim and allocating burdens of proof is to provide a fair and inexpensive procedure for the proper determination of claims on the merits." In re Shank, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004) (finding insufficient documentation is not a basis to disallow a claim in the absence of challenge under § 502(b)); see also In re Umstead, No. 12-16185, 2013 WL 1324943, at *4 (Bankr. E.D. Pa. April 3, 2013). This policy is embodied in Bankruptcy Rule 1001, which provides: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." The claims process is intended to be a simple, manageable process–not one full of pitfalls that prevent legitimate claims from being paid. The harder courts make it for legitimate creditors to get paid, the farther they get from the goals of bankruptcy and the pursuit of justice.

As the court in Shank noted, bankruptcy imposes a variety of burdens on creditors, not the least of which is the prospect of discharge. Given this reality, creditors "may have no economic incentive to respond to an objection to a claim even if the claim is valid; the expense

_____

construed to be consistent with these rules and the Code.")

of doing so may easily exceed the potential return." 315 B.R. at 812. If debtors can successfully

challenge assigned claims based on lack of documentation when the debtor admits incurring the

debt and no other creditor has filed a competing proof of claim, the process may result in

perverse incentives for the debtor. See In re Velez, 465 B.R. 912, 919 (Bankr. S.D. Fla. 2012)

(finding that failure to attach supporting documentation to a claim is not a basis for disallowance

under § 502(b)).

> "Debtors with no evidence that the claims are invalid may be
> inclined to launch 'fishing expeditions' for documents that the
> claimants simply cannot produce timely or economically. Creditors
> who have executed their claims under penalty of fines and
> imprisonment will be forced to decide whether producing
> documentation is economically feasible for a $5,000 claim, while
> debtors who have signed bankruptcy schedules under penalty of
> perjury are relieved of their obligations to include those claims in a
> chapter 13 plan based on a technicality."

Id. (quoting In re Habiballa, 337 B.R. 911, 916 (Bankr. E.D. Wis. 2006)).

Debtor's claims objections were filed on November 28, 2012 and, thus, were "then

pending" at the time the amended Rule went into effect on December 1, 2012. Because amended

Rule 3001 promotes the goals of an efficient claims allowance process that minimizes economic

burdens on the creditor without in any way limiting the debtor's ability to challenge a claim for

any of the substantive bases enumerated in § 502(b), the Court concludes application of the

amended Rule to this proceeding is just and practicable.

**Prima Facie Validity of the Claims**. Rule 3001(f) provides that "[a] proof of claim

executed and filed in accordance with these rules shall constitute prima facie evidence of the

validity and amount of the claim," which creates a presumption in favor of allowance. In re LJL

Truck Ctr., Inc., 299 B.R. 663, 666 (Bankr. M.D. Ga. 2003) (Walker, J.). The objecting party

11

bears the burden of rebutting the presumption through "facts tending to defeat the claim by

probative force equal to that of the allegations of the proofs of claim." Id. (quotations marks and

citations omitted). If the presumption of allowance is rebutted, the burden to prove the claim is

determined by applicable nonbankruptcy law. Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15,

21, 120 S. Ct. 1951, 1955 (2000).

According to the comments to the current version of Rule 3001(c)(3), a claim based on an

open-end consumer credit agreement is entitled to the assumption of prima facie validity under

Rule 3001(f) if it complies with subsections (c)(3)(A)[5] and the applicable provisions of

subsections (a), (b), (c)(2), and (e).[6]  Thus, the claims at issue must:

Under subsection (c)(3)(A), include an attached statement that provides–
• the name of the transferee of the claim;
• the name of the creditor at time of the debtor's last transaction;
• the date of the last transaction;
• the date of the last payment; and

---

[5] Based on the comment, the claimants' failure to produce copies of the assignments in
response to Debtor's discovery requests has no effect on their claims' prima facie validity. The
comment excludes Rule 3001(c)(3)(B)–which requires the claimant to provide a copy of the
writing on which the claim is based upon written demand–from the list of subsections that must
be satisfied for the presumption of validity to arise under Rule 3001(f). Instead, the consequences
of failure to produce the assignment are controlled by Rule 3001(c)(2)(D), which authorizes the
Court to exclude the writing from evidence in a subsequent contested matter or adversary
proceeding or to award other appropriate relief, including fees and expenses. See also Fed. R.
Bankr. P. 7037; Fed. R. Civ. P. 37 (setting forth procedures to compel discovery and sanctions
for failing to cooperate with discovery). Thus, the presumption of validity may arise even if the
creditor declines to produce the underlying writing. However, if the debtor successfully rebuts
the presumption and shifts the burden of persuasion to the creditor, the court may prevent the
creditor from relying on the assignment to prove its right to enforce the debt.

[6] Compare the committee comment to the view of the court in Shank, which discussed a
prior version of Rule 3001(c) and the effect of Rule 3001(f): "In view of this evidentiary effect,
the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require
sufficient documentation that has some evidentiary import and establish something other than the
same conclusory allegations set forth in the proof of claim itself." 315 B.R. at 810.

- the charge-off date.

Under subsection (a)–
- substantially conform to Official Form 10.

Under subsection (b)–
- be executed by the creditor or an authorized agent.

Under subsection (c)(2)–
- provide an itemized statement of any interest, fees, expenses, or charges included in the claim.

Under subsection (e)(1)[7]–
- be filed by the transferee of the claim.

In this case, the claims at issue substantially meet these requirements as follows:

**Claim 8**–all requirements satisfied except the date of the last transaction

- <u>name of transferee</u>: the summary describes MOMA Funding LLC as the "Current Creditor"

- <u>name of creditor at time of last transaction</u>: the summary describes GE Money Bank as the "Original Creditor" and as the "Assignor"

- <u>date of last transaction</u>: not provided

- <u>last payment date</u>: given as 5/4/2012

- <u>charge-off date</u>: given as 8/13/2012

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by an authorized agent of the creditor

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the claim includes $70 described as "Account Interest/Fees"

---

[7] Rule 3001(e) sets out filing procedures for transferred claims. Subsection (e)(1) provides that "[i]f a claim has been transferred other than for security before the proof of the claim has been filed, <u>the proof of claim may be filed only by the transferee</u> or an indenture trustee." Fed. R. Bankr. P. 3001(e)(1) (emphasis added). If Debtor's position prevails in this case, this Rule would result in a conundrum in that the original, known creditor is precluded from filing a claim and, at the same time, a claim filed by the assignee in conformance with the Rules can be rendered a nullity merely because the debtor fails to recognize the assignee.

- <u>filed by the transferee</u>: the claim was filed in the name of MOMA Funding LLC

- <u>additional identifying information</u>: the summary provides an account balance, date the debtor opened the account, last payment amount, and last four digits of the account number

**Claim 9**–all requirements satisfied except charge-off date

- <u>name of transferee</u>: the summary describes Back Bowl I LLC, Series C as the "Creditor Name"

- <u>name of creditor at time of last transaction</u>: the summary describes CitiBank as the "Issuer"

- <u>date of last transaction</u>: last purchase date given as December 29, 2011

- <u>last payment date</u>: given as June 1, 2012

- <u>charge-off date</u>: not provided

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by an authorized agent of the creditor

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary lists "Interest" in the amount of $55.00 and "Fees, Expenses, or Other Charges" in the amount of $563.60

- <u>filed by the transferee</u>: the claim was filed in the name of Back Bowl I LLC, Series C

- <u>additional identifying information</u>: the summary provides an account balance, date the debtor opened the account, the last payment amount, and the last four digits of account number

**Claim 10**–all requirements satisfied except charge-off date

- <u>name of transferee</u>: the summary describes Back Bowl I LLC, Series C as the "Creditor Name"

- <u>name of creditor at time of last transaction</u>: the summary describes CitiBank as the "Issuer"

- <u>date of last transaction</u>: last purchase date given of May 28, 2012

- <u>last payment date</u>: given as May 7, 2012

- <u>charge-off date</u>: not provided

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all the information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by the creditor's authorized agent

14

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary provides for "Interest" of $55.00 and for "Fees, Expenses, or Other Charges" of $27.09

- <u>filed by the transferee</u>: the claim was filed in the name of Back Bowl I LLC, Series C

- <u>additional identifying information</u>: the summary provides an account balance, date the debtor opened the account, the last payment amount, and last four digits of account number

**Claim 11**–all requirements satisfied except date of last transaction

- <u>name of transferee</u>: the summary describes Portfolio Recovery Associates, LLC as "Account Owner"

- <u>name of creditor at time of last transaction</u>: the summary describes Capital One, NA as "Original Creditor" and as "Account Purchased From"

- <u>date of last transaction</u>: not provided

- <u>last payment date</u>: given as 5/18/2012

- <u>charge-off date</u>: given as 8/9/2012

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all the information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by the creditor's authorized agent

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary provides for "Interest Amount" of $0.00 and "Fee Amounts" of $0.00

- <u>filed by the transferee</u>: the claim was filed in the name of Portfolio Recovery Associates, LLC

- <u>additional identifying information</u>: the summary includes an account balance, date the debtor opened the account, last four digits of account number, and bill of sale for an unidentified group of accounts from Capital One Bank to Portfolio Recovery Associates

**Claim 12**–all requirements satisfied except date of last transaction

- <u>name of transferee</u>: the summary describes Portfolio Recovery Associates, LLC as "Account Owner"

- <u>name of creditor at time of last transaction</u>: the summary describes Sears Gold Mastercard as "Original Creditor" and Citibank, N.A. as "Account Purchased From"

- <u>date of last transaction</u>: not provided

- <u>last payment date</u>: given as 5/11/2012

- <u>charge-off date</u>: given as 8/15/2012

15

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all the information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by the creditor's authorized agent

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary provides for "Interest Amount" of $0.00 and "Fee Amounts" of $0.00

- <u>filed by the transferee</u>: the claim was filed in the name of Portfolio Recovery Associates, LLC

- <u>additional identifying information</u>: the summary includes an account balance, date the debtor opened the account, last four digits of account number, and bill of sale and assignment of an unidentified group of accounts from Citibank, N.A. to Portfolio Recovery Associates, LLC


**Claim 13**–all requirements satisfied except date of last transaction

- <u>name of transferee</u>: the summary describes Portfolio Recovery Associates, LLC as "Account Owner"

- <u>name of creditor at time of last transaction</u>: the summary describes Chase Bank USA, N.A. as "Original Creditor" and "Account Purchased From"

- <u>date of last transaction</u>: not provided

- <u>last payment date</u>: given as 5/23/2012

- <u>charge-off date</u>: given as 9/11/2012

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all the information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by the creditor's authorized agent

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary provides for "Interest Amount" of $0.00 and "Fee Amounts" of $0.00

- <u>filed by the transferee</u>: the claim was filed in the name of Portfolio Recovery Associates, LLC

- <u>additional identifying information</u>: the summary includes an account balance, date the debtor opened the account, last four digits of account number, and bill of sale of an unidentified group of accounts from Chase Bank USA, N.A. to Portfolio Recovery Associates, LLC


**Claim 15**–all requirements satisfied except date of last transaction

- <u>name of transferee</u>: the summary describes Portfolio Recovery Associates, LLC as "Account Owner"

- <u>name of creditor at time of last transaction</u>: the summary describes Chase Bank USA, N.A. as "Original Creditor" and "Account Purchased From"

- <u>date of last transaction</u>: not provided

- <u>last payment date</u>: given as 5/18/2012

- <u>charge-off date</u>: given as 9/11/2012

- <u>conformance to Official Form 10</u>: attached to the claim is an account summary with substantially all the information required by Rule 3001(c)(3)(A)

- <u>executed by the creditor or authorized agent</u>: the claim was executed by the creditor's authorized agent

- <u>itemized statement of any interest, fees, expenses, or charges</u>: the summary provides for "Interest Amount" of $151.00 and "Fee Amounts" of $35.00

- <u>filed by the transferee</u>: the claim was filed in the name of Portfolio Recovery Associates, LLC

- <u>additional identifying information</u>: the summary includes an account balance, date the debtor opened the account, last four digits of account number, bill of sale of an unidentified group of accounts from Chase Bank USA, N.A. to Portfolio Recovery Associates, LLC

The Court finds all the proofs of claim at issue meet the requirements for prima facie validity under Rule 3001(f). "Prima facie validity is established by substantial compliance with 'the spirit of the applicable rules ....'" <u>In re Muller</u>, 479 B.R. 508, 513 (Bankr. W.D. Ark. 2012) (quoting <u>Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)</u>, 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004)). Here, Rule 3001(c) expressly excludes credit card claims from the requirement to file a copy of the writing on which the claim is based. It also expressly anticipates the possibility that the claim was assigned by requiring the creditor to provide "the name of the entity from whom the creditor purchased the account" along with other information specific to the account that allows the debtor to identify the account.[8] Fed. R. Bankr. P. 3001(c)(3)(A)(i). As the Committee Comment explains, the purpose of the new disclosure requirements is to "assist the

---

[8] These requirements also limit the possibility of fraudulent claims, as they include information not typically disclosed in the schedules or known by strangers to the credit card account.

17

debtor in associating the claim with a known account." Fed. R. Bankr. P. 3001, Comment to

2012 Amendments. Although none of the proofs of claim provide 100 percent of the information

required by Rule 3001(c)(3), the missing information does not affect the ability of Debtor to

match the claim to a known and acknowledged debt. And, in each case, the account summary

attached to the proof of claim provides additional information not expressly required by the Rule

that can be useful in identifying a corresponding debt. Thus, the claims substantially comply with

the spirit of Rule 3001.

**Overcoming Prima Facie Validity of an Assigned Claim**. Having determined the

claims at issue are presumptively valid, the Court next considers whether Debtor has offered

sufficient evidence to rebut that presumption. In this case, the proofs of claims are considered

prima facie evidence of the validity and amount of the creditors' claims. Debtor now bears the

burden of rebutting the prima facie validity by producing evidence of equivalent probative value.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992). The only evidence offered by

Debtor in this case is his testimony that he never entered into an agreement with the claimants, he

never received notice of any assignments related to the claims or any communications from the

claimants, and he has never heard of the claimants.

In In re Davis, No. 09-42865, 2011 WL 1302222 (Bankr. E.D. Texas March 31, 2011),

the debtor objected to substantially all claims filed in her case, including a claim filed on behalf

of Portfolio Recovery Associates as successor in interest to Citibank for a Sears credit card

account ending in numbers 4128. The proof of claim included an attached one-page summary of

account information. The debtor had also scheduled a claim for a Sears Gold Mastercard account

ending in numbers 4128. Id. at *3. The debtor objected in part "because there is no document

18

showing any valid, enforceable contractual relationship between Claimant and the Debtor." Id. at

*4. The debtor also supplied an affidavit asserting that the lack of documentation prevented her

from verifying the amount of the claims, verifying the accounts, determining whether the charges

were made within the statute of limitations period, or determining whether the claims were

enforceable. Id.

The court found the objection was based solely on insufficiency of documentation under

Rule 3001 and not any substantive grounds set forth in § 502(b). Id. at *9-10. As a result, there

was no basis for disallowing the claim. Id. at *10. However, the court found that the

documentation provided with the proofs of claim fulfilled "Bankruptcy Rule 3001's essential

purpose of providing objecting parties with sufficient information to evaluate the nature of the

claims." Id. As a result, the claim was entitled to prima facie validity under Rule 3001(f). Id. at

*11. The court further concluded that if the debtor had properly raised a substantive objection to

the claims at issue under § 502(b), such an objection would be overruled because debtor "failed

to produce evidence at least equal in probative force to that offered by the proofs of claim." Id.

Similarly, in Muller an assignee of a credit card debt filed a proof of claim with an

account summary that included:

> the amount of the debt; the name and account number of the
> debtor; a breakdown of the principal, interest, and fees charged; the
> date the debt was charged off; the name of the original
> creditor–THD Consumer; an indication that [the assignee]
> purchased the account from Citibank, N.A. after the account was
> charged off; and the date of the original loan.

479 B.R. at 517. The debtor testified that he did not recognize the entity listed as the original

creditor in the proof of claim–THD Consumer. Nevertheless, the court refused to disallow the

claim under § 502(b)(1) because the court was able to match the claim with a scheduled debt

owed to Home Depot Credit Services, based on identity of account number. Id. Thus, even when

the debtor questioned the identity of the original creditor, the court overruled the claim objection

because "the debtor did not present any evidence to prove an exception under § 502(b), other

than his lack of recognition...." Id. See also In re McDonald, No. 07-40698, 2010 WL 8545152,

at *2 (Bankr. S.D. Ga. Feb. 25, 2010) (Chapter 7 debtor's testimony that she was not an obligor

on certain debts of her husband was not sufficient to overcome the prima facie validity of the

related proofs of claim when debtor listed the debts as joint debts on her schedules).

    Judge Laney's decision in Pursley v. eCast Settlement Corporation (In re Pursley), 451

B.R. 213 (Bankr. M.D. Ga. 2011) (Laney, C.J.), produced a different result. At issue were three

proofs of claim for credit card debt filed in three different cases[9] by a purported assignee of the

original creditor. Id. at 216. In Pursley, eCast filed a proof of claim as an assignee of Citibank, in

an amount that exactly matched the scheduled amount. It also attached a copy of a blanket

assignment of accounts signed by a representative of Citibank that identified the assignor and

assignee and identified the assigned accounts as those "described in Exhibit 1 and the final

electronic file." The proof of claim did not include a copy of Exhibit 1 or a printout of the final

electronic file. Furthermore, the documents suggested some ambiguity as to the actual date of the

assignment. The proof of claim did include a summary of account information similar to the

information listed in the proof of claim, plus the account's open date and charge-off date. Id. at

216-17.

---

[9] In Pursley, Judge Laney consolidated three cases with similar facts: In re Pursley, No.
10-40882; In re Crane, No. 10-40958; and In re Hamby, No. 09-40967. For brevity, the Court
will examine only those facts presented in the Pursley case.

ECast amended its claim with an affidavit from a Citibank representative stating that the debtor's account had been transferred to eCast. The affidavit provided the transfer date, the ending digits of the debtor's account number, a partial social security number, the account opening date, the final balance, and the last payment date. ECast also provided 13 consecutive account statements and a partial credit card application. Id. at 217.

The debtor objected to eCast's proof of claim based on insufficient documentation. The debtor also offered stipulated testimony conceding the existence and validity of the debt and the identity of the original creditor but denying any prepetition knowledge of eCast. Id. at 218. In addition, the debtor's attorney requested documents from eCast which eCast declined to provide. Id. The court construed the objection as raising two issues: (1) sufficiency of documentation and (2) eCast's standing to assert the claim, which implicates § 502(b)(1). Id.

The court first concluded the claim was entitled to presumptive validity under Rule 3001(f) because the proof of claim included summaries and attachments that sufficiently described the chain of title. Id. at 228. However, the debtors overcame the presumption of validity by offering testimony that "they had no prior dealings with eCAST, that they did not know anything about eCAST, and that they have never owed eCAST any money." Id. at 233. To rebut the presumptive validity of the proof of claim, "the objector's evidence must negate at least one allegation that is essential to the claim." Id. at 232. The court explained that "regarding assignments, one essential allegation is that the claimant can prove its assignment under state law." Id. After reviewing the documents attached to eCast's proof of claim, and noting some concern about the uncertain date of assignment, the court determined the debtor's testimony was "sufficient to negate eCAST's claim that it is the real party in interest." Id. at 233; see also In re

Taranto, No. 10-76041, 2012 WL 1066300, at *8 (Bankr. E.D.N.Y. March 27, 2012) (where the

proof of claim lacked documentary evidence of a specific assignment of the debt, the debtors

rebutted the claim's prima facie validity by swearing they had no dealings with the assignee and

they did not believe they owed money to the assignee).

While acknowledging the facts in Pursley presented a close case, the court was influenced

by the debtor's information disadvantage, which essentially left her in the position of trying to

prove a negative–that no assignment occurred. 451 B.R. at 233. This was made even more

difficult by eCast's refusal to produce the actual assignment records upon request of the debtor's

attorney. Id. Having rebutted the presumption of validity, the burden fell to eCast to prove a valid

assignment under Georgia law. Id. at 233-34. The court found the attachments to the proof of

claim were not sufficient to do so. Id. at 234. "The written assignments refer to outside sources

describing the accounts being assigned .... However, no copies or printout of these [outside

sources] are attached. The assignment documents merely assign unidentified accounts or

unidentified debtors for unspecified amounts." Id. Thus, the court sustained the objection to

claim. Id.

Underlying the court's decision was its conviction that "bankruptcy is not a shortcut for

claims unprovable elsewhere" and consequently "creditors cannot use the Bankruptcy Code's

expedited claims-proving process, and its lower evidentiary burdens, to collect on a claim it

could not prove under state law." Id. at 234, 219.

I disagree with Pursley in two respects. First, I am unpersuaded that a debtor's testimony

that he never made any agreement with any of the entities who filed the proofs of claim; he never

received any notice of assignment of the claims; he never received any correspondence or other

communications from the assignees; he has never heard of the assignees; and he has no

knowledge that he owes money to the assignees is sufficient to rebut the evidentiary presumption

of validity of a proof of claim. See In re Samson, 392 B.R. 724, 732 (Bankr. N.D. Ohio 2008).

The debtor's knowledge of an assignment, or lack thereof, is not necessarily relevant to the

validity of the assignment. "Contractual principles hold that notice of an assignment to the

obligor, here the Debtors, is not an essential element to the validity of an assignment as between

an assignor and an assignee." Id. (citing 29 Williston on Contracts § 74:56 (4th ed.)); see also

Hosch v. Colonial Pacific Leasing Corp., 313 Ga. App. 873, 874, 722 S.E.2d 778, 779 (Ct. App.

Ga. 2012) (notice of assignment to debtor was not required when contract expressly authorized

assignment without such notice; the record in Hosch included the written assignment); O.C.G.A.

§ 11-9-406(a) (Supp. 2012) (if the debtor has not received notice of assignment, the debtor can

discharge its obligation by paying the original creditor). Furthermore, by filing a proof of claim,

the claimant has sworn to ownership of the debt under the threat of criminal penalties for perjury,

including incarceration for up to five years. Samson, 392 B.R. at 732 (citing 18 U.S.C. § 157).

Thus, when the debtor admits to incurring the underlying debt, he must demonstrate more than

mere ignorance of the assignment to provide evidence equal in probative force to the proof of

claim. For example, if a different entity filed a claim for the same debt, that second proof of

claim would be sufficient evidence to rebut the prima facie validity of the assignee's proof of

claim, as would a notice that the debt had been assigned to an entity other than the claimant.

Second, Pursley focused on whether the creditor could prove its assignment under state

law by establishing it was the proper party in interest to enforce the claim. Section 502(b)(1),

provides for disallowance of claims that are "unenforceable" against the debtor or his property

under applicable law. In my opinion, the enforceability of a claim for purposes of § 502(b)(1)

refers to the nature of the claim, not to sufficiency of proof. The legislative history to § 502

provides a sample list of reasons a claim may be unenforceable, including "usury,

unconscionability, or failure of consideration" and "any claim for deficiency by an undersecured

creditor on a nonrecourse loan or under a State antideficiency law[.]" H. Rept. No. 95-595 to

accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 353-55; 124 Cong. Rec. H 11093, H

11095, H 11110 (Sept. 28, 1978). In each example, the debt would be unenforceable regardless

of the claimant's ability to meet its burden of proof as to standing.

### Conclusion

Although the claims and the claim objections at issue in this case were filed prior to

December 1, 2012, the Court concludes it is fair and just to apply the current version of Rule

3001 when deciding this case. The Court finds each disputed proof of claim sufficiently complied

with Rule 3001 to be entitled to a presumption of validity. The Court finds Debtor's testimony

that he is unaware of the assignment of these claims and is unfamiliar with the assignees is not

sufficient to rebut the presumption of validity when: Debtor scheduled a substantially identical

debt; the proof of claim provided Debtor with sufficient information to match the claim to a

scheduled debt, including the identity of the original creditor; the claimant executed the proof of

claim under penalty of perjury; no competing claims were filed by the original creditor or some

other entity; and Debtor failed to allege a basis for concluding the claims, by their nature, are

unenforceable under nonbankruptcy law.

Because Debtor has failed to prove a basis for disallowing the challenged claims under

§ 502(b), the Court will overrule Debtor's objections to claims 8, 9, 10, 11, 12, 13, and 15.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

APPENDIX A

**Rule 3001(c) (effective December 1, 2012)**
(c) *Supporting Information*

(1) *Claim Based on a Writing.* Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply.* In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

(3) *Claim Based on an Open-End or Revolving Consumer Credit Agreement.*

(A) When a claim is based on an open-end or revolving consumer credit agreement–except one for which a security interest is claimed in the debtor's real property–a statement shall be filed with the proof of claim, including all of the following information that applies to the account:

(i) the name of the entity from whom the creditor purchased the account;

26

(ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;

(iii) the date of an account holder's last transaction;

(iv) the date of the last payment on the account; and

(v) the date on which the account was charged to profit and loss.

(B) On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision.

**Official Form 10 (December 2012)**
Box 7 provides as follows:

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "**redacted**".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Instruction 7 provides as follows:

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**Rule 3001(c) (effective December 1, 2011)**

(c) *Supporting Information*

(1) *Claim Based on a Writing.* When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply.* In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

**Official Form 10 (December 2011)**

Box 7 provides as follows:

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*)

28

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Instruction 7 provides as follows:

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.